**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MJC SUPPLY, LLC and MJC AMERICA, LTD., | CV 18-1265 RSWL-SK |
| Plaintiffs, | **Order re: Plaintiffs'** |
| v. | **Motions in Limine Nos.** |
| | **1-4** [82-85]; **Defendant's** |
| SCOTTSDALE INSURANCE COMPANY, | **Motions in Limine Nos.** |
| | **1-6** [87-92] |
| Defendant. | |

Currently before the Court is Plaintiffs' MJC Supply, LLC and MJC America, Ltd., (collectively, "Plaintiffs") Motions in Limine ("MIL") Nos. 1-4 [82-85] and Defendant Scottsdale Insurance Company's ("Defendant") MIL Nos. 1-6 [87-92]. Having reviewed all papers and arguments submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiffs' MIL #1 [82]; **GRANTS in part and DENIES in part** Plaintiffs' MIL #2 [83]; **GRANTS** Plaintiffs' MIL #3 [84]; **DENIES** Plaintiffs' MIL #4 [85]; **GRANTS in part and DENIES in part** Defendant's MIL

#1 [87]; **DENIES** Defendant's MIL #2 [88]; **DENIES** Defendant's MIL #3 [89]; **DENIES** Defendant's MIL #4 [90]; **DENIES** Defendant's MIL #5 [91]; and **GRANTS** Defendant's MIL #6 [92].

## I. BACKGROUND

Plaintiffs bring this Action against Defendant regarding an insurance coverage dispute. Compl., ECF No. 1. Plaintiffs allege that Defendant failed to fulfill its contractual obligations to provide an immediate defense to Plaintiffs and their officers or board members in connection with two underlying lawsuits involving Plaintiffs (collectively, the "Underlying Actions"), one in state court (the "State Action") and one in federal court (the "Federal Action"). Plaintiffs contend that Defendant's conduct constituted both a breach of the three insurance policies it issued to Plaintiffs (the "Policies") and a breach of the implied covenant of good faith and fair dealing. Currently before the Court is Plaintiffs' and Defendant's MIL for the forthcoming trial set for June 18, 2019. Plaintiffs filed four MIL requesting that the Court:

MIL #1)  Exclude evidence, references to evidence, testimony, or argument related to a lawsuit entitled MJC SUPPLY, LLC, et al. v. Winston & Strawn LLP, et al., No. BC676714, filed in the Superior Court of

| | | |
|---|---|---|
| 1 | | the State of California; |
| 2 | MIL #2) | Exclude or limit the report and testimony |
| 3 | | by Defendant's expert witness, Bernd G. |
| 4 | | Heinze, Esq.; |
| 5 | MIL #3) | Exclude evidence of Ropers Majeski |
| 6 | | document production marked as Defendant's |
| 7 | | Exhibit 154, or other documents demanded |
| 8 | | from Defendant during discovery which were |
| 9 | | not produced to Plaintiffs; |
| 10 | MIL #4) | Exclude evidence related to the "Insured |
| 11 | | vs. Insured" Exclusion obtained by |
| 12 | | Defendant after October 1, 2013 |

Defendant filed six MIL requesting that the Court:

| | | |
|---|---|---|
| 14 | MIL #1) | Exclude undisclosed expert witnesses and |
| 15 | | witnesses that failed to appear for |
| 16 | | deposition; |
| 17 | MIL #2) | Exclude evidence of and references to |
| 18 | | Defendant's financial condition and net |
| 19 | | worth; |
| 20 | MIL #3) | Limit testimony of Plaintiffs' expert |
| 21 | | witness at trial to those expressed in his |
| 22 | | Rule 26 report and deposition; |
| 23 | MIL #4) | Exclude Plaintiffs' claim for attorney |
| 24 | | fees and all evidence and testimony in |
| 25 | | support thereof at trial; |
| 26 | MIL #5) | Exclude evidence relating to Plaintiffs' |
| 27 | | reasonable expectations regarding coverage |

MIL #6) Exclude evidence that does not constitute
a loss under the Policies

## II. DISCUSSION

### A. __Plaintiffs' MIL #1 is GRANTED__

In **Plaintiffs' MIL #1**, Plaintiffs seek to exclude
evidence, references to evidence, testimony, or
argument relating to a lawsuit entitled <u>MJC Supply,
LLC, et al. v. Winston & Strawn LLP, et al.</u>, No.
BC676714 (the "Winston Lawsuit"), filed in the Superior
Court of the State of California, County of Los
Angeles.[1]  Plaintiffs filed the Winston Lawsuit alleging
that Winston & Strawn LLP ("Winston Strawn"), who
represented Plaintiffs in the Underlying Actions,
charged excessive fees and committed malpractice by,
among other reasons, not advising Plaintiffs to
immediately tender defense of the Underlying State
Action to Defendant.  Plaintiffs contend that evidence
of the Winston Lawsuit is irrelevant, unfairly
prejudicial, confusing and misleading, and will waste
the Court's time.

---

[1] Specifically, Plaintiffs seek to exclude pleadings in the
Winston Lawsuit as provided in Defendant's exhibits 142
(Complaint filed by MJC Supply and MJC America against Winston
Strawn), 143 (First Amended Complaint filed by MJC Supply and MJC
America against Winston Strawn), 144 (Cross-Complaint filed by
Winston Strawn against MJC Supply and MJC America), 148
(Declaration of Michael Olson in support of Peter Hwu's and Peter
Hwu APC's demurrer), 168 (Winston Strawn's First Amended Cross-
Complaint Against Plaintiffs), and 169 (Demurrer filed on behalf
of Peter Hwu to Winston Strawn's Cross-Complaint).

Defendant asserts three primary arguments as to why the Winston Lawsuit is relevant. First, Defendant contends that Plaintiffs took contradictory positions in the Winston Lawsuit versus this Action. Specifically, Defendant claims that Plaintiffs filed the Winston Lawsuit alleging, in pertinent part, that Winston Strawn failed to timely tender the State Action to Defendant, but in this Action Plaintiffs contend that the Underlying Actions were timely tendered to Defendant. Whether Winston Strawn timely tendered the State Action to Defendant is irrelevant in light of the Court's Order regarding the Parties' Motions for Summary Judgment ("Summary Judgment Order") [97], in which the Court found that Defendant was duty-bound to provide a defense for the State Action under the MJC Policies upon receiving notice of it in September 2013, even if Winston Strawn did not tender the State Action explicitly under the MJC Policies until much later. Defendant further asserts that in this Action Plaintiffs claim they are entitled to the $42 million Judgment they obtained in the Underlying Federal Action because Defendant misrepresented Policy limits, but in the Winston Lawsuit Plaintiffs alleged that it was Winston Strawn who advised them to settle and forgo the $42.5 million Judgment. However, this is also irrelevant since the Court ruled in its Summary Judgment Order that Plaintiffs cannot recover for the

amounts they gave up to settle the Underlying Actions.[2] Lastly, Defendant points out that in this Action Plaintiffs claim that Defendant must reimburse Plaintiffs for the entire $800,000 paid to Winston Strawn while Defendant was not providing a defense, but Plaintiffs argued in the Winston Lawsuit that Winston Strawn was over-billing them during the course of the Underlying Actions.  However, Plaintiffs' mere allegations that Winston Strawn over-billed are insufficient to establish that Winston Strawn actually over-billed.[3]  Thus, allowing Defendant to introduce such evidence would unfairly prejudice Plaintiffs and risk confusing the jury.

Second, Defendant asserts that this Court already recognized the relevance of the Winston Lawsuit in its Summary Judgment Order, when it granted Defendant's request that the Court take judicial notice of certain filings in the Winston Lawsuit.  However, the Court's ruling was based on the facts and issues before the Court at that juncture.  Given that the Court ruled on

---

[2] Plaintiffs believe that irrespective of the Court's Summary Judgment Order, they are entitled to the amounts given up to globally settle the Underlying Actions as tort damages in the event that the jury finds Defendant breached the implied covenant of good faith and fair dealing.  As discussed more fully in connection with Defendant's MIL #6, the Court rejects this argument.

[3] Notably, Defendant does not indicate that it intends to introduce Court rulings or party admissions establishing whether Winston Strawn did, in fact, over-bill Plaintiffs.

many of these issues in its Order, the Winston Lawsuit is no longer relevant for those purposes.

Third, Defendant vaguely states that the Winston Lawsuit is relevant to provide necessary background information to this Action, but fails to indicate what background information this entails, and why Defendant is unable to get the information from any other less prejudicial source.

In sum, the Court finds that the Winston Lawsuit is irrelevant to the issues remaining to be tried in this Action and allowing Defendant to introduce pleadings from the Winston Lawsuit would prejudice Plaintiffs. Thus, the Court **GRANTS** Plaintiffs' MIL #1.[4]

## B. **Plaintiffs' MIL #2 is GRANTED in part and DENIED in part**

**Plaintiffs' MIL # 2** requests that the Court exclude all of Defendant's expert, Bernd Heinze ("Heinze"), reports and opinions, references to reports and opinions, testimony, or argument relating to whether Defendant's handling in this case complied with the standard of care and generally accepted customs and practices for insurance companies and claims adjusters in the insurance industry. Plaintiffs base this

---

[4] The Court bases its ruling on the specific facts presented in the MILs. To the extent that other evidence at trial reveals that information contained in the Winston Lawsuit is relevant to this Action, the Court's ultimate rulings will depend on the facts and circumstances as presented at trial.

request on the following: (1) Heinze's report fails to establish his qualifications to opine on the standards of a claims handler; (2) Heinze's report contains only impermissible legal conclusions; and (3) Defendant failed to disclose that Heinze would testify as to opinions related to the billings of Winston Strawn or the propriety of the allocation of costs, charges, and expenses by Defendant. The Court addresses each assertion in turn.

First, whether Heinze is qualified to provide expert testimony depends on the subject matter of his testimony. In his Rule 26 report, Heinze declares that he has "been asked to offer an opinion as to whether the conduct and positions of Scottsdale in the handling of the underlying claims . . . were consistent with the generally accepted standard of care, customs, usages and practices of the insurance industry at the relevant and material times involved in this matter." Pls.' MIL #2, Ex. A ("Heinze Report"), ECF No. 83-1. Plaintiffs argue that Heinze is not qualified to opine on the standards of a claims handler because he is an attorney that works in the insurance industry and has not shown any relevant experience as a claims handler. While Heinze's occupation as an insurance attorney on its own may be insufficient to render him an expert on claims

handling, Heinze also has other relevant experience[5] which tips the scales towards finding that he contains the requisite skill, experience, training, and education to render him an expert on claims handling. See Fed. R. Evid. 702 (requiring that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education"); Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004)(citations omitted)("Rule 702 'contemplates a *broad conception* of expert qualifications.'"). Although Heinze's experience with claim handling is slight in comparison to his experience as an insurance attorney, the question of the degree of expertise or knowledge "goes to the weight of the testimony rather than to its admissibility." Jeffer, Mangels & Butler v. Glickman, 286 Cal. Rptr. 243, 249 (Cal. Ct. App. 1991).

Second, it is well-settled, and neither party disputes, that Heinze may not testify as to legal

---

[5] Among other things, Heinze indicates the following experience: representing and advising insurance carriers for more than 35 years; Vice President and Chief Litigation Counsel for Reliance Insurance Company; certification by all 50 state's insurance departments to provide continuing education seminars on insurance claims; providing expert testimony in 79 insurance-related matters; providing regulatory testimony to the National Association of Insurance Commissioners, the National Council of Insurance Legislators, and the National Council of State Legislatures; providing congressional testimony; membership in several insurance-related organizations; several professional honors for insurance-related work. See Heinze Report.

conclusions.  See e.g. Hangarter v. Provident Life and
Acc. Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)
(internal citations and quotations omitted) ("[E]xpert
testimony concerning an ultimate issue is not per se
improper . . . . [t]hat said, an expert witness cannot
give an opinion as to her *legal conclusion*, i.e. an
opinion on an ultimate issue of law.").  However,
whether testimony constitutes an improper legal
conclusion is not always clear.  Defendant opposes
Plaintiffs' MIL #2 to the extent that it prohibits
Heinze from offering opinions on whether Defendant
acted reasonably and within insurance industry
standards.  The Court does not interpret Plaintiffs'
MIL #2 as seeking to exclude such testimony.  To be
sure, however, the Court holds that while Heinze may
not testify as to the legal conclusion of whether
Defendant's conduct constituted a breach of the implied
covenant of good faith and fair dealing, Heinze may
testify as to whether Defendant complied with insurance
industry standards.  See id. (finding expert testimony
that Defendant failed to comport with industry
standards did not inappropriately constitute a legal
conclusion on the issue of bad faith).

Third, Plaintiffs assert that they learned for the
first time during their deposition of Heinze on June

11, 2019,[6] that he intends to testify as to the Winston Strawn billings and the propriety of the allocation of costs, charges, and expenses by Defendant. Specifically, during the deposition Heinze testified that he was asked to review the Winston Strawn bills for the first time "shortly after" the Court issued its Summary Judgment Order on June 4, 2019, and that he has not yet reviewed any of the work product as reflected in the bills. Pursuant to Federal Rule of Civil Procedure 26(2)(B), an expert witness is required to provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(B)(i). A party's failure to comply with the requirements of Rule 26 is grounds for excluding evidence at trial. Fed. R. Civ. P. 37(c). As previously indicated, Defendant retained Heinze to provide testimony as to Defendant's claims handling. Defendant did not disclose to Plaintiffs that Heinze would also testify on issues related to the Winston bills and defense costs Plaintiffs shared with Defendant. Informing Plaintiffs for the first time one

---

[6] The parties exchanged their Rule 26 expert disclosures on March 15, 2019, and Defendant disclosed Bernd Heinze as its sole retained expert. On April 5, 2019, the Court extended the date for completion of expert depositions to June 1, 2019. Plaintiffs contend that Defendant did not make Heinze available for deposition before the cut-off date, but did produce him for deposition on June 11, 2019.

week prior to trial, during a belated deposition of Heinze, falls woefully short of satisfying the requirements of the Federal Rules of Civil Procedure and risks severe prejudice to Plaintiffs.

As such, the Court **GRANTS in part** Plaintiffs' MIL #2 to preclude Heinze from testifying as to the Winston Strawn billings and the propriety of the allocation of costs, charges, and expenses by Defendant. The Court **DENIES in part** the remainder of Plaintiffs' MIL #2.

## C. Plaintiffs' MIL #3 is GRANTED

**Plaintiffs' MIL #3** requests that the Court exclude all evidence, references to evidence, testimony, or argument relating to the Ropers Majeski Kohn & Bentley[7] Production ("Ropers Production") marked as Defendant's Exhibit 154, or other documents demanded from Defendant during discovery which were not produced to Plaintiffs. Plaintiffs contend that in response to their request that Defendant produce documents contained in any files maintained by Ropers with respect to the Underlying Actions, Defendant objected and indicated that it did not have a copy of the files maintained by Ropers, but that it would produce non-privileged responsive documents within its possession, custody, or control which can be located following a diligent search and

---

[7] Ropers Majeski Kohn & Bentley ("Ropers") was the firm that Defendant appointed to defend Plaintiffs in the Underlying Actions.

reasonably inquiry.  Pls.' MIL #3, Exs. 1-2, ECF No.
84-1.  Plaintiffs assert that Defendant produced a few
innocuous documents from the Ropers firm as part of the
claim file production, but otherwise failed to disclose
the Ropers Production.  Yet, on May 14, 2019, Defendant
disclosed its intent to introduce evidence relating to
the Ropers Production as Exhibit 154 in this Action.

Defendant opposes Plaintiffs' MIL #3 because it is
vague and overly broad.  However, Plaintiffs cannot
make their request any more specific at this juncture,
because to the extent that the Ropers Production
contains documents which Defendant has withheld from
Plaintiffs, Plaintiffs cannot know what Defendant will
attempt to introduce.  After Plaintiffs filed their MIL
#3, it became incumbent upon Defendant to identify
whether it intended to introduce a document not
produced in discovery, and provide an explanation as to
why it failed to comply with Plaintiffs' discovery
requests.  Yet, Defendant failed to do so.  This Court
will not permit Defendant to prejudice Plaintiffs and
delay trial proceedings by allowing it to introduce
documents into evidence that were not produced in
response to Plaintiffs discovery requests.  Because
Defendant's Exhibit 154 only lists the Ropers
Production generally, Defendant must remove any
documents within the Ropers Production not produced
during discovery.  As such, the Court **GRANTS**

Plaintiffs' MIL #3 to exclude documents Defendant
failed to produce in response to Plaintiffs' discovery
demands.  To the extent that certain documents in the
Ropers Production were produced during discovery, they
are not excluded based on this ruling.

## D.  **Plaintiffs' MIL #4 is DENIED**

Plaintiffs' MIL #4 requests that the Court exclude
all evidence, references to evidence, testimony, or
argument relating to evidence concerning the Policy's
Insured vs. Insured Exclusion obtained by Defendant
after October 1, 2013.  After Plaintiffs tendered the
State Action to Defendant in September 2013, Defendant
initially agreed to provide a defense, but on October
1, 2013 Defendant withdrew its defense claiming the
State Action was brought by insureds under the Policy
against other insureds under the same Policy.  The
issue remaining to be tried is whether Defendant had
conclusive evidence as of October 1, 2013 that the
Insured vs. Insured Exclusion applied.  See Atlantic
Mutual, 123 Cal. Rptr. 2d at 272 ("An insurer may rely
on an exclusion to deny coverage only if it provides
*conclusive evidence* demonstrating that the exclusion
applies.").

Plaintiffs argue that Defendant has disclosed its
intent to introduce evidence relating to the Insured
vs. Insured Exclusion dated or obtained by Defendant
after October 1, 2013 (i.e. Exs. 139, 140, 146, 147,

149, 150, 151, 152, 153, 157, 158, 159, 160, 163, 165, 166, 167, and 170), but that such evidence cannot be used to justify Defendant's decision to withdraw the defense when it did. Defendant opposes this argument claiming that it is too broad, and that it is appropriate for Defendant to use certain later-acquired documents and testimony as circumstantial evidence.[8]

The Court agrees with Defendant that certain later-acquired evidence may be relevant as circumstantial evidence establishing what Defendant knew on October 1, 2013. For example, in the Court's Summary Judgment Order, the Court relied on an October 16, 2013 letter by Defendant, which addressed several reasons why Defendant believed that the Insured vs. Insured Exclusion applied. The Court relied on the October 16, 2013 letter because it referred to what Defendant had learned prior to it pulling the defense on October 1, 2013. Without knowing specifically what information is contained in the disputed exhibits and other later-acquired evidence, the Court cannot conclude at this juncture that they should all be excluded. That being said, the Court will not permit Defendant to introduce later-acquired evidence to prove that the Insured vs.

---

[8] Defendant also claims that it needs later-acquired evidence in order to rebut Plaintiffs' claim to recover the $42.5 million Judgment Plaintiffs obtained in the Federal Action, but as already discussed, the Court dismissed this claim in its Summary Judgment Order.

Insured Exclusion applied if it bears no relevance to what Defendant knew at the time it pulled the defense. With this limitation in mind, the Court **DENIES** Plaintiffs' MIL #4.

## E. **Defendant's MIL #1 is DENIED in part and GRANTED in part**

Defendant's MIL #1 requests that the Court exclude undisclosed expert witnesses and witnesses that failed to appear for their depositions. Specifically, Defendant seeks to exclude Plaintiffs' coverage counsel, Raymond H. Sheen, Esq. ("Sheen") and Plaintiffs' officers or directors, Simon Chu ("Chu") and Charley Loh ("Loh").

First, the parties dispute whether Defendant properly noticed the witnesses of their depositions. Defendant attempted to serve Sheen on May 22, 2019 (and actually served him on May 23, 2019) with a subpoena requiring him to appear at a deposition on May 24, 2019 which was more than 100 miles away and to which he was required to bring several categories of documents. Sheen was not given adequate time to reschedule his deposition, as the close of discovery was set to occur just days later, on May 31, 2019. Defendant's attempt to depose Sheen was too little too late, and the Court will not penalize Plaintiffs as a result. Defendant is similarly to blame for its failed efforts to take a second deposition of Chu and Loh, as it never issued

and served Chu or Loh with a deposition subpoena.  As
such, none of the witnesses will be excluded on these
grounds.

Second, even though Sheen, Chu, and Loh were not
designated as expert witnesses, Defendant believes that
Plaintiffs will attempt to elicit expert testimony from
them.  Plaintiffs oppose, arguing that none of these
witnesses come as a surprise to Defendant, as they were
all identified in Defendant's Rule 26 disclosure served
more than a year ago, and that the disclosure contained
the exact testimony that the witnesses will testify to
at trial.  Moreover, Plaintiffs assert that the
witnesses may permissibly testify as to their personal
opinions formed from their perceptions and experience.

With respect to Sheen, Plaintiffs indicated in
their Third Amended Rule 26 Disclosure of Experts on
March 14, 2019 that Sheen, a non-retained expert
witness, "[w]ill testify to his opinions that were
relied on in tendering the claims for coverage and the
reasonableness and necessity of the fees incurred in
proving coverage."  Sheen was Plaintiffs' coverage
counsel and thus his testimony as a lay witness is both
relevant and admissible.  However, Sheen is prohibited
from also providing expert testimony at trial because
Plaintiffs failed to comply with Federal Rule of Civil
Procedure 26(a)(2)(C), which required them to disclose
to Defendant "the subject matter on which the witness

is expected to present evidence under Federal Rule of
Evidence 702, 703, or 705; and a summary of the facts
and opinions to which the witness is expected to
testify."  Fed. R. Civ. Pro. 26(a)(2)(C).  While
Plaintiffs identified the subject matter on which Sheen
is expected to testify, Plaintiffs have not shown that
they also provided Defendant with a summary of the
facts and opinions to which Sheen is expected to
testify.  As such, the Court will not permit Sheen to
provide expert testimony.

As for Chu and Loh, Plaintiffs indicate that they
will offer lay opinion testimony under Federal Rule of
Evidence 701.  Chu and Loh were both officers or
directors of Plaintiffs who were defendants in the
Underlying Actions.  Thus, they may testify as
percipient witnesses.  Defendant believes that
Plaintiffs will elicit expert testimony from Chu and
Loh regarding costs and fees, however, Plaintiffs
respond that they do not intend to elicit such expert
testimony, and that Chu and Loh would only be called
upon to testify that they incurred fees and paid them.
Such testimony is "not based on scientific, technical,
or other specialized knowledge within the scope of Rule
702."  Thus, the Court declines to exclude it at this
juncture.

In sum, the Court **DENIES** in part Defendant's MIL #1
to the extent that Defendant seeks to exclude Sheen,

Chu, and Loh as witnesses generally, and **GRANTS** in part
Defendant's MIL #1 to limit the testimony of Sheen,
Chu, and Loh to non-expert testimony.  Sheen, Chu, and
Loh are not precluded from providing their own lay
opinion where the testimony is based on their own
perception and does not venture into the province of
designated experts.

## F.    Defendant's MIL #2 is DENIED

**Defendant's MIL #2** requests that the Court exclude
evidence of and references to Defendant's financial
condition and net worth because such information is
irrelevant and would create a substantial danger of
undue prejudice to Defendant.[9]  Plaintiffs respond that
Defendant's request is overly broad, and that
Defendant's financial condition is relevant to the
issue of Defendant's liability for breaching the
covenant of good faith and fair dealing.  Specifically,
Plaintiffs argue that Defendant has a history of late
payments because it is in financial trouble, and that
Defendant has a pattern and practice of putting its own
interest ahead of its insureds for financial reasons.
In furtherance of this argument, Plaintiffs point to
written documents in the claim file which show that
Defendant's management complained to its claims

[9] Defendant also requests that the Court bifurcate
Plaintiffs' claim for punitive damages.  However, the Court
dismissed Plaintiffs' punitive damages claim in its Summary
Judgment Order and thus this issue is no longer relevant.

adjuster that the costs of the litigations were too high and pressure was put on the adjuster to keep costs down.  Plaintiffs believe that this was the true motivation for forcing the insureds to pay an allocation of the defense costs.

The Court agrees with Plaintiffs that evidence related to Defendant's financial condition is relevant in this Action.  For example, evidence of Defendant's financial condition may be used to show that Defendant withheld Policy benefits in its own financial interest, but otherwise without proper cause, which can establish that Defendant breached the implied covenant of good faith and fair dealing.  See Chateau Chamberay Homeowners Ass'n v. Assoc. Intern. Ins. Co., 108 Cal. Rptr. 2d 776, 784 (Cal. Ct. App. 2001), *disapproved on other grounds* (stating that a breach of the implied covenant of good faith and fair dealing is found where an insurer acts unreasonably or without proper cause). Defendant argues that even if the Court finds such evidence relevant, it should nonetheless be excluded under Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of unfair prejudice.  However, unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, Advisory Committee Notes.  Because evidence showing that Defendant has a

pattern and practice of putting its own interests ahead of its insureds for financial reasons is probative to show whether Defendant acted unreasonably and thereby breached the implied covenant of good faith and fair dealing, any resulting prejudice is not unfair.

That being said, Defendant fears that Plaintiffs may rely on evidence of Defendant's financial condition to suggest to the jury that Defendant has deep pockets and thus should bear the burden of any loss. Indeed, using such evidence for this purpose is irrelevant to any issues in this case and would unfairly prejudice Defendant. As such, the Court prohibits Plaintiffs from introducing evidence of Defendant's financial condition for this improper purpose. With this limitation in mind, the Court **DENIES** Defendant's MIL #2.

## G. Defendant's MIL #3 is DENIED

**Defendant's MIL #3** requests that the Court limit the testimony of Plaintiffs' expert witness, Charles Henderson ("Henderson"), at trial to what was expressed in his deposition and Rule 26 report. Plaintiffs oppose this MIL on the ground that limiting Henderson to specific "testimony" provided in his report and deposition is impermissibly narrow.

As stated, Defendant's request in MIL #3 is too restrictive. Defendant fails to cite any requirement that experts must stick to their previous testimony.

Instead, experts are permitted to offer any testimony on the opinions, conclusions, and matters stated in their Rule 26 reports and depositions. Accordingly, the Court **DENIES** Defendant's MIL #3.

## H. **Defendant's MIL #4 is DENIED**

**Defendant's MIL #4** requests that the Court exclude Plaintiffs' claim for attorneys' fees and any evidence in support thereof. Defendant's MIL #4 predominantly focuses on Defendant's request that the Court exclude invoices and testimony from Plaintiffs' prior and current attorneys concerning the amount of <u>Brandt</u> fees incurred. However, the Court dismissed Plaintiffs' claim for <u>Brandt</u> fees in its Summary Judgment Order and thus, this request is no longer relevant. While Plaintiffs indicate that they do not intend to introduce evidence of <u>Brandt</u> fees, Plaintiffs oppose to the extent that the MIL seeks to exclude legal fees from Winston Strawn incurred in defending Plaintiffs during the period of Defendant's breach. The Court finds no basis to exclude the Winston Strawn fees, which are the damages incurred by Plaintiffs as a result of Defendant's breach of the Policies. As such, the Court declines to exclude the Winston Strawn fees.

Defendant next asks that Plaintiffs be precluded from offering any evidence in support of their newly developed damages claim for alleged unpaid vendor fees since Plaintiffs failed to identify these vendor fees

as damages in their Rule 26 initial disclosures, supplemental Rule 26 disclosures, or their responses to Defendant's interrogatories.  Plaintiffs oppose, arguing that they produced the various vendor bills as early as December 21, 2018 in Plaintiffs' Supplemental Responses to Interrogatories.  Indeed, Plaintiffs supplemented their response to Interrogatory #1 by indicating that Defendant breached the contract by forcing Plaintiffs to fund portions of the defense costs including "paying fees for vendors such as court reporters, interpreters, videographers, mediators and e-discovery vendors."  See Pls.' Opp'n, Ex. 1, ECF No. 113-1.  Plaintiffs further indicated that these costs "exceeded $300,000 as evidenced by the chart of expenses being produced pursuant to Scottsdale's request for documents."  Id.  Moreover, in Plaintiffs' supplemental response to Interrogatory #35, which asks about the damages sought by Plaintiffs, Plaintiffs indicated that they are in part seeking "Defense costs paid by MJC of about $300,000."  Id.  These supplemental responses belie Defendant's assertion that Plaintiffs have not complied with Rule 26 or otherwise informed Defendant of this "newly developed damages claim."  Thus, the Court **DENIES** Defendant's MIL #4.

## I.  **Defendant's MIL #5 is DENIED**

**Defendant's MIL #5** requests that the Court exclude evidence relating to Plaintiffs' reasonable

expectations regarding coverage.  Defendant bases this request on (1) its belief that the Policies are unambiguous and thus the insured's expectations regarding coverage are irrelevant, and (2) even if the insureds' reasonable expectations were relevant because of an ambiguity in the Policies, the insureds' reasonable expectations are questions of law for the trial court rather than fact questions for the jury. Plaintiffs oppose on the basis that Defendant's request is overly broad, and Plaintiffs' expectations regarding coverage are relevant to their claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

The Court agrees with Plaintiffs.  Even if the jury is not ultimately charged with deciding whether Plaintiffs had a reasonable expectation of coverage, this does not mean that testimony regarding the same is irrelevant.  Indeed, Plaintiffs' expectations of coverage may be relevant to Plaintiffs' claims for breach of contract and bad faith.  Further, the request is vague and it is unclear what evidence specifically falls within its reach.  For example, documentary evidence, such as coverage correspondence between Plaintiffs and their attorneys and Defendant could fall within such a broad exclusion.  Without more information about the context in which this information is being used, the Court is unable to say at this

juncture that it should be excluded.  Thus, the Court **DENIES** Defendant's MIL #5.

## J.   **Defendant's MIL #6 is GRANTED**

**Defendant's MIL #6** requests that the Court exclude evidence of the $42.5 million Judgment that Plaintiffs obtained in the Federal Action ("Federal Judgment"), and the difference between the $42.5 million Federal Judgment and the $28 million Plaintiffs received pursuant to the global settlement ("Settlement"). Defendant bases this request on the fact that, as this Court held in its Summary Judgment Order, these amounts do not constitute a "Loss" under the Policies. Plaintiffs oppose, arguing that Defendant's request is overly broad and that even if the Federal Judgment or difference between the Federal Judgment and Settlement does not constitute a "Loss" under the Policies, these amounts still may be compensable as tort damages if the jury finds that Defendant breached the implied covenant of good faith and fair dealing.

First, the Court rejects Plaintiffs' suggestion that they can recover the $42.5 million Federal Judgment or the difference between the Federal Judgment and Settlement as damages flowing from Defendant's breach of the implied covenant of good faith and fair dealing.  In the Court's Summary Judgment Order, the Court concluded that a triable issue of fact exists as to whether Defendant acted unreasonably in failing to

provide an immediate defense under the MJC Policies or
by withdrawing coverage under the Gree USA Policy, such
that Defendant should be liable for breaching the
covenant.  Plaintiffs fail to present any new argument
as to how the forgone Federal Judgment, or the
difference between the Federal Judgment and the
Settlement, proximately results from such breach.
Instead, Plaintiffs reassert arguments they previously
raised to the Court in their Opposition to Defendant's
Motion for Summary Judgment.  Specifically, Plaintiffs
allege that Defendant misrepresented Policy limits to
Plaintiffs, making them believe that they had
insufficient funds left on the Policy to try the State
Action and thereby inducing them to enter in the
Settlement.  Plaintiffs rely on Defendant's alleged
misrepresentations as a basis for arguing that
Defendant breached the implied covenant of good faith
and fair dealing.  However, the Court already addressed
and rejected Plaintiffs' claim that Defendant
misrepresented Policy limits.[10]   See Summary Judgment

_____

[10] Plaintiffs use their Opposition to Defendant's MIL #6 as a
back-door way to have the Court to reconsider its holding in its
Summary Judgment Order that Defendant did not misrepresent Policy
limits because an additional $1 million limit did not apply to
Plaintiffs.  In order for the additional $1 million limit to apply,
three conditions must have been satisfied: (1) the insured directors
or officers must have suffered a "Loss" as defined under the Policies;
(2) the insured directors or officers must have been legally obligated
to pay such "Loss;" and (3) the company must not have indemnified the
insured directors or officers for such "Loss."  In the Court's Summary
Judgment Order, it held that the additional $1 million limit did not

Order at 33-37, 45-46.  The Court maintains its ruling as stated in the Summary Judgment Order, and rejects Plaintiffs' claim that they are entitled to recover the amounts given up in the Settlement as damages flowing from a finding that Defendant breached the implied covenant of good faith and fair dealing.

Second, the Court agrees with Defendant that because the Federal Judgment and Settlement are no longer at issue in this Action—since they do not constitute a "Loss" under the Policies and may not be recovered as damages in the event that Defendant is found to have breached the implied covenant of good faith and fair dealing—they are irrelevant.  Because they are irrelevant, allowing them to be introduced as evidence at trial only stands to prejudice Defendant, confuse the jury, and waste time.  As such, the Court **GRANTS** Defendant's MIL #6.

apply because the Settlement did not constitute a "Loss" under the Policies.  See Summary Judgment Order at 45:10-46:23.  Plaintiffs now argue that even if the Settlement was not a "Loss," Plaintiffs would have eventually incurred a "Loss" if they had to pay their own defense fees to try the State Action.  The Court finds this argument equally unavailing because such "Loss" had not yet occurred at the time Defendant made the alleged misrepresentation, and whether such "Loss" would eventually occur is entirely speculative at this juncture.  Moreover, even if Plaintiffs were experiencing financial issues, it is unclear whether the insured directors or officers would have paid the attorneys' fees themselves.  Thus, the conditions required in order for the $1 million limit to apply were not satisfied at the time of the alleged misrepresentation, and whether they would have ever been satisfied is speculative at best.  For these reasons, and others already stated in the Court's Summary Judgment Order, the Court denies Plaintiffs' claim that it is entitled to recover the foregone Federal Judgment.

### III. CONCLUSION

For the foregoing reasons, the Court: **GRANTS** Plaintiffs' MIL #1 [82]; **GRANTS in part and DENIES in part** Plaintiffs' MIL #2 [83]; **GRANTS** Plaintiffs' MIL #3 [84]; **DENIES** Plaintiffs' MIL #4 [85]; **GRANTS in part and DENIES in part** Defendant's MIL #1 [87]; **DENIES** Defendant's MIL #2 [88]; **DENIES** Defendant's MIL #3 [89]; **DENIES** Defendant's MIL #4 [90]; **DENIES** Defendant's MIL #5 [91]; and **GRANTS** Defendant's MIL #6 [92].

**IT IS SO ORDERED.**

                                 **/s/ RONALD S.W. LEW**

DATED: June 16, 2019

                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge